## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROCCO A DIMAGGIO,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

CIVIL ACTION NO. 3:21-CV-01406

(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff Rocco A DiMaggio ("DiMaggio") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 10). For the following reasons, the undersigned shall order that the Commissioner's decision be **AFFIRMED.**

### I.    BACKGROUND AND PROCEDURAL HISTORY

On January 6, 2016, DiMaggio protectively filed an application under Title II for disability insurance benefits, alleging disability beginning July 17, 2015. (Doc. 13-3, at 25). The Social Security Administration initially denied the application on March 4, 2016, prompting DiMaggio's request for a hearing, which Administrative Law Judge Scott M. Staller held on August 3, 2017. (Doc. 13-3, at 25). In a written decision dated November 27, 2017, the original Administrative Law Judge determined that DiMaggio "has not been under

a disability, as defined in the Social Security Act, from July 17, 2015, through [November 27, 2017]" and therefore is not entitled to benefits under Title II. (Doc. 13-3, at 37). The Appeals Council granted DiMaggio's request for review and on September 5, 2019, remanded his case back to an Administrative Law Judge for review. (Doc. 13-3, at 42, 44). Specifically, the Appeals Council directed an Administrative Law Judge to further consider "the severity and effects of [DiMaggio's] obesity" and "[his] maximum residual functional capacity." (Doc. 13-3, at 44).

On March 16, 2020, a hearing was held by Administrative Law Judge Richard E. Guida (the "ALJ") in which DiMaggio claimed a closed period of disability from July 17, 2015, to June 30, 2018. (Doc. 13-2, at 16). In a written decision dated April 13, 2020, the ALJ determined that DiMaggio "has not been under a disability, as defined in the Social Security Act, from July 17, 2015, through [April 13, 2020,]" and therefore is not entitled to benefits under Title II. (Doc. 13-2, at 25).

On August 12, 2021, DiMaggio commenced the instant action. (Doc. 1). The Commissioner responded on October 29, 2021, providing the requisite transcripts from DiMaggio's disability proceedings. (Doc. 12; Doc. 13). The parties then filed their respective briefs, with DiMaggio raising one base for reversal or remand. (Doc. 16; Doc. 17; Doc. 18).

## II.   STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a

claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131. To establish an entitlement to disability insurance benefits under Title II, the claimant must establish that he or she suffered from a disability on or before the date on which they are last insured.

A.   ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B.   JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence."

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

*Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether DiMaggio is disabled, but whether the Commissioner's determination that DiMaggio is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings

- 4 -

of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III.   THE ALJ'S DECISION

In his written decision, the ALJ determined that DiMaggio "has not been under a disability, as defined in the Social Security Act, from July 17, 2015, through the date of this decision." (Doc. 13-2, at 25). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4).

### A.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that DiMaggio engaged in substantial gainful activity from the fourth quarter of 2018 through the third quarter of 2019. (Doc. 13-2, at 18). However, the ALJ stated that "there has been a continuous 12-month perio[d] during which [DiMaggio] did not engage in substantial gainful activity," and therefore proceeded to step two of the analysis.[2] (Doc. 12-2, at 19).

### B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically

---

[2] The ALJ noted that he was "considering the entire period under review, including all periods where the claimant worked. Thus, the relevant period under review is from the alleged onset date through the date of this decision." (Doc. 13-2, at 19).

determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that DiMaggio had three severe medically determinable impairments – major depressive disorder, panic disorder, and alcohol dependence. (Doc. 13-2, at 19). The ALJ also considered the effects of DiMaggio's obesity and found that it was a non-severe impairment. (Doc. 13-2, at 19).

C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise, the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of DiMaggio's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 12-2, at 21). The ALJ considered the following listings: 12.04 – depressive, bipolar and related disorders and 12.06 – anxiety and obsessive-compulsive disorders. (Doc. 12-2, at 21).

D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, DiMaggio alleged that he has anticipatory anxiety and it worsens when he is pressured in a productive work environment, that he misses work due to his symptomatology, and that he does not handle stress or changes in a routine well and becomes anxious. (Doc. 13-2, at 21). The ALJ found that while DiMaggio's medically determinable impairments could reasonably be expected to cause the alleged symptoms, DiMaggio's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 13-2, at 21-22). After weighing and considering the evidence, the ALJ determined that DiMaggio had the, "[RFC] to perform light work as defined in 20 C.F.R. 404.1567(b), except work that is limited to simple and routine tasks, involving only simple work-related decisions, and with few, if any, work place changes; no production pace work; only occasional interaction with supervisors, coworkers, and the public." (Doc. 13-2, at 21).

E.   STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess,* 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, based on testimony adduced from a vocational expert at DiMaggio's administrative hearing, the ALJ determined that DiMaggio was unable to perform his past relevant work as an electronic assembler, retail sales clerk, or auto mechanic and thus, proceeded to step five of the sequential analysis. (Doc. 13-2, at 24).

F.   STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering DiMaggio's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that DiMaggio can perform. (Doc. 13-2, at 24). In making

this determination, the ALJ relied on the vocational expert's testimony that DiMaggio is able to perform the requirements of occupations such as a cleaner/housekeeper, baker worker – conveyor line, and small products assembler with open positions ranging from 100,000 to 900,000 nationally. (Doc. 13-2, at 25). Accordingly, the ALJ determined that DiMaggio is not disabled and denied his application for benefits. (Doc. 13-2, at 25).

## IV. DISCUSSION

### A. THE ALJ DID NOT ERR IN HIS RFC DETERMINATION REGARDING DIMAGGIO'S IMPAIRMENTS.

DiMaggio contends that the ALJ failed to adequately develop the record regarding his mental health limitations. (Doc. 16, at 5). Specifically, DiMaggio states that "the lay ALJ unilaterally made [his RFC] determination without the benefit of any credible source opinion evidence to guide him." (Doc. 16, at 5-6). DiMaggio takes issue with the opinion of Dr. John Gavazzi, Psy.D., a state agency medical consultant, and states that his opinion does not include the worsening of his condition after March 2016. (Doc. 16, at 7). DiMaggio notes the medical treatment records from Dr. Miller and Dr. Coronado demonstrating the increasing severity of his mental limitations along with his own testimony and claims that the ALJ was required to obtain an updated medical opinion. (Doc. 16, at 7-11). Further, DiMaggio argues that the ALJ erred in determining his mental limitations by relying on evidence outside of the period of disability. (Doc. 16, at 12). Finally, DiMaggio asserts that he "could not have met the basic mental requirements of even simple, unskilled work" and that he could not have met the attendance and participation requirements opined by the vocational expert. (Doc. 16, at 13). The Commissioner argues that DiMaggio possesses the burden of developing the record and that the ALJ is ultimately responsible for crafting an RFC determination. (Doc. 17, at 10,

12). The Commissioner also argues that the ALJ cited relevant evidence when determining DiMaggio's mental limitations and workplace limitations. (Doc. 17, at 16-17).

The Third Circuit has ruled that the ALJ—not treating or examining physicians or state agency consultants—must make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities despite the limitations caused by his or her impairment(s). 20 C.F.R. § 404.1545(a); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d at 112, 121 (3d Cir. 2000). In determining the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). The ALJ, however, is only required to include limitations credibly established by the medical evidence and not every limitation alleged. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

"[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett,* 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). In determining whether the claimant is disabled, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *see Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (plaintiff's "subjective complaints must be substantiated by medical evidence."); *see also Chandler,* 667 F.3d at 363 ("statements about your pain or other symptoms

- 10 -

will not alone establish that you are disabled."). Additionally, the ALJ should consider the claimant's daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures the claimant uses to address the pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). "To establish disability, there must be objective medical evidence from an acceptable medical source showing that the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged and that leads to the conclusion that the claimant is disabled when considered with the other evidence of record." *Stancavage v. Saul*, 469 F. Supp. 3d 311, 337 (M.D. Pa. 2020). A claimant's allegations alone will not establish that he is disabled. 20 C.F.R. § 404.1529.

The Court's "review of the ALJ's assessment of the [claimant]'s RFC is deferential," and the "RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018); *see also Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) ("We examine the ALJ's conclusions as to a claimant's RFC with the deference required of the substantial evidence standard of review." (internal quotation marks omitted)).

At step five of his determination, the ALJ found that

> [DiMaggio] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except work that is limited to simple and routine tasks, involving only simple work-related decisions, and with few, if any, work place changes; no production pace work; only occasional interaction with supervisors, coworkers, and the public.

(Doc. 13-2, at 21).

DiMaggio argues that the ALJ utilized his lay opinion when determining his RFC without considering adequate credible source opinion evidence for the relevant period. (Doc. 16, at 5-

- 11 -

6, 11). Specifically, DiMaggio contends that the ALJ's consideration of Dr. Gavazzi's opinion was outdated and that the ALJ was required to obtain a new medical source opinion. (Doc. 16, at 7, 11).

In *Chandler*, the claimant argued that the ALJ erred upon reviewing the intervening developments of the record, and, applying his own lay opinion, concluded that the claimant had the same RFC as assessed by a non-examining medical consultant a year earlier. *Chandler*, 667 F.3d at 362. The Third Circuit found that, under these circumstances, an ALJ was not precluded from reaching an RFC assessment without independent medical review of every fact, and was not required to seek outside medical assistance to assess whether the year-old non-examining source opinion was consistent with the intervening developments in the record. *Chandler, 667 F.3d at 362*. "Although reliance on State consultants' and treating physicians' opinions is common and ALJ's are required to consider any existing State consultant reports, *see* 20 C.F.R. §§ 404.1519, 404.1527(f), the regulations do not require ALJ's to seek outside expert assistance, *see* 20 C.F.R. §§ 404.1546(c), 404.1527(e), SSR 96-5p (July 2, 1996)." *Chandler, 667 F.3d at 362*.

In the context of the entire opinion, however, this language centers around the issue of whether it is improper for the ALJ to engage in the lay opinion of intervening evidence while formulating a claimant's RFC. Here, like in *Chandler*, the ALJ relied on a medical opinion from a state agency consultant as the basis of his RFC determination and then adjusted it in light of new medical evidence. (Doc. 13-2, at 23).

The ALJ specifically outlined DiMaggio's history of mental impairments in his RFC determination. (Doc. 13-2, at 22-23). The ALJ stated that:

- 12 -

> Although at times during the relevant period, he was observed as having a blunted affect and depressed and anxious mood, including having irritability, the record generally reveals normal findings or non-remarkable findings with [DiMaggio's] mood and affect. Further, [DiMaggio] is primarily noted as having unremarkable speech, appropriate thought process, and [DiMaggio] is generally paying attention to his grooming, and the overall examinations reveal no significant deficits with memory, attention/concentration, or social/behavioral deficits, and [DiMaggio] does not report suicidal or homicidal ideations and [DiMaggio] has not been psychiatrically hospitalized during the relevant period. Additionally, [DiMaggio] participates with mental therapy without the record noting difficulties with his participation.

(Doc. 13-2, at 22).

The ALJ noted DiMaggio's "extensive outpatient therapy records with medication management" during the relevant period, specifically from July 27, 2015, to March 9, 2018. (Doc. 13-2, at 22; Doc. 13-7, at 59, 206). Further, the ALJ used DiMaggio's February 2017 therapy record as an example illustrating that he was "stable . . . [and] doing fine with his depression and anxiety," demonstrating a "non-remarkable mood and affect, non-remarkable attention/concentration, normal thought process, and [that DiMaggio was] paying attention to his grooming." (Doc. 13-2, at 22; Doc. 13-7, at 90-91).

The ALJ also examined the effects of DiMaggio's alcohol dependency to determine his RFC. (Doc. 13-2, at 23). The ALJ concluded that

> Although the claimant reported drinking alcohol near the alleged onset date as a coping mechanism for depression, and the claimant is noted as having a history of alcohol use with some binge drinking behaviors, the claimant's overall mental symptomatology improved with ongoing medication and therapy and the record does not reveal significant and continuous use of alcohol throughout the entire relevant period (6F/4, 7F; 8F; 10F; 11F). However, the undersigned considered the claimant's alcohol use in affording the claimant mental limitations.

(Doc. 13-2, at 23).

- 13 -

The ALJ considered the opinion evidence of the state agency psychological consultant, Dr. Gavazzi, and found that his opinion "was generally consistent with the overall examination findings, but [DiMaggio] has needed extensive mental health treatment . . . to help manage and improve his symptomatology." (Doc. 13-2, at 23). Specifically, Dr. Gavazzi found mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no limits with activities or daily living or repeated episodes of decompensation. (Doc. 13-3, at 17).

DiMaggio contends that after Dr. Gavazzi's opinion, his mental health condition deteriorated, thus proving Dr. Gavazzi's opinion outdated, and the ALJ was required to obtain an updated medical opinion. (Doc. 16, at 11). However, the ALJ considered DiMaggio's continuing mental health issues after Dr. Gavazzi's opinion in conjunction with the opinion and found that DiMaggio had moderate limitations. (Doc. 13-2, at 23). Dr. Gavazzi's opinion was given on March 1, 2016, which is within the alleged closed period of July 17, 2015, to June 20, 2018. (Doc. 13-3, at 18). The ALJ noted issues with Dr. Gavazzi's opinion, stating that DiMaggio "is noted as having an altered mood with depressive and anxious findings at times and irritability." (Doc. 13-2, at 22-23). The ALJ considered evidence on the record after Dr. Gavazzi provided his opinion in March 2016 and before the closed period of June 30, 2018, and specifically noted DiMaggio's therapy records from February 2017. (Doc. 13-2, at 22-23; Doc. 13-7, at 86, 89-91, 98, 111, 119, 125, 162, 165, 168). Ultimately, the ALJ found that "the conservative treatment supports no more than moderate limitations, and the residual functional capacity contains moderate limitations." (Doc. 13-2, at 23). Thus, the ALJ considered more than the opinion of Dr. Gavazzi and did not base his

findings on his lay opinion as he cited substantial evidence on the record between the closed period of disability.

The ALJ found that DiMaggio was "limited to simple and routine tasks, involving only simple work-related decisions, and with few, if any, work place changes; no production pace work; only occasional interaction with supervisors, coworkers, and the public." (Doc. 13-2, at 21). The ALJ, having not been presented with evidence that DiMaggio was unable to perform work with further mental limitations than he provided in the RFC, was not precluded from concluding that DiMaggio could perform such work. *See Hess*, 931 F.3d at 201. Further, the ALJ's mental RFC is actually more favorable than Dr. Gavazzi's opinion, the only mental medical opinion that explicitly stated DiMaggio's mental RFC. (Doc. 13-2, at 21; Doc. 13-3, at 17-18); *see Dietrich v. Saul*, 501 F. Supp. 3d 283, 290 (M.D. Pa. 2020). Although Dr. Gavazzi opined that DiMaggio had mild difficulties and no limitations in the various mental function criteria, the ALJ found that the record supported "no more than moderate limitations" which were reflected in the RFC. (Doc. 13-2, at 23; Doc. 13-3, at 17-18).

DiMaggio notes the treatment records from Dr. Miller and Dr. Coronado evidencing the increasing severity of his mental limitations along with his own testimony and claims that the ALJ was required to obtain an updated medical opinion. (Doc. 16, at 7-11). DiMaggio claims that absent an updated medical opinion, the ALJ was left to speculate. (Doc. 16, at 5-6).

When making an RFC determination, the ALJ is obligated to develop the record fully and fairly. *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). This obligation may entail a consultative examination requirement. 20 C.F.R. § 404.1519(a)(b)(4). Such examinations are "require[d]" when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence

- 15 -

must be resolved, ... or [t]here is an indication of a change in [the claimant's] condition that is likely to affect [his or her] ability to work, but the current severity of [the] impairment is not established. 20 C.F.R. § 404.1519(a)(b)(4)-(5). If the claimant does not establish "that such an examination is necessary to enable the ALJ to make the disability decision," then the procurement of a consultative examination is left to the discretion of the ALJ. *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002).

> When . . . an ALJ fashions a residual functional capacity determination on a sparse factual record in the absence of any competent medical opinion evidence which indicates that the claimant is disabled, reviewing courts should adopt a pragmatic view and sustain the ALJ's exercise of independent judgment if that decision is properly based upon all of the facts and evidence.

> *Woodman v. Berryhill*, No. 3:17-cv-151, 2018 WL 1056401, at *5 (M.D. Pa. 2018).

The burden still "lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987), and 20 C.F.R. §§ 404.1512(a)). "While an ALJ is required to assist the claimant in developing a full record, he or she has no such obligation to 'make a case' for every claimant." *Kenyon v. Colvin,* No. 3:12-CV-1812, 2013 WL 6628057, at *5 (M.D. Pa. Dec. 16, 2013). "The decision to order a consultative examination is within the sound discretion of the ALJ." *Thompson*, 45 F. App'x at 149. Under the regulations, the Commissioner "may" request a claimant to attend a consultative examination. 20 C.F.R. § 404.1512. The regulations authorize the ALJ to obtain a consultative examination if there remains information needed to make a disability determination, "such as clinical findings, laboratory tests, a diagnosis or a prognosis" which cannot be obtained from the medical

record. 20 C.F.R. § 404.1519a. Such an examination may be requested when the Commissioner is not presented with the information that is necessary to make a decision or is presented with inconsistent information. 20 C.F.R. § 404.1519a(a)-(b). If the inconsistency or lack of information does not allow the Commissioner to make a decision, the Commissioner may take follow-up steps to develop the record, including by re-contacting a medical source. 20 C.F.R. § 404.1519a(b)(2)(i); *see also Swink v. Saul*, 931 F.3d 765, 770-71 (8th Cir. 2019); 20 C.F.R. § 404.1519a.

"With testimonial evidence, medical opinions, and submitted medical history, the ALJ was presented with sufficient information to make a decision and acted properly within the scope of his discretion by not ordering consultative examinations or attempting to obtain interrogatories that [the claimant] could also have obtained." *Dietrich*, 501 F. Supp. 3d at 293; *see* 20 C.F.R. §§ 404.1512, 404.1519a; *Thompson*, 45 F. App'x at 149; *see also Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) ("The ALJ is not required to order such [consultative] examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient."); *Herring v. Colvin,* 181 F. Supp. 3d 258, 269-72 (M.D. Pa. 2014). The question is not whether DiMaggio demonstrated some evidence that could support a finding of disability. *See Kirk v. Colvin*, No. 4:13-CV-02735, 2015 WL 5915748, at *13 (M.D. Pa. Oct. 8, 2015). The question is whether the ALJ reasonably concluded that the record in totality failed to support DiMaggio's claims. *Kirk*, 2015 WL 5915748, at *13. An ALJ is afforded substantial discretion in addressing contradictions and reviewing the totality of the record for consistency. *See Cooper v. Comm'r of Soc. Sec.,* 563 F. App'x 904, 911 n.9 (3d Cir. 2014) ("it is within the ALJ's discretion to weigh the evidence"); *Dula v. Barnhart*, 129 F. App'x 715, 718 (3d Cir. 2005); *Miller v. Comm'r of Soc. Sec.,* 172 F.3d 303, 305-06 (3d Cir. 1999).

- 17 -

Here, the ALJ's finding of disability was consistent with the medical evidence of record, which, along with DiMaggio's medical examinations, did not reflect the same severity of work-related limitations as those DiMaggio alleged. DiMaggio points to the treatment notes from Dr. Miller and Dr. Coronado as evidence that he required greater mental limitations. (Doc. 16, at 7-11). Dr. Miller treated DiMaggio throughout the closed period of disability. (Doc. 13-7, at 67, 201, 2016). Additionally, DiMaggio was evaluated by Dr. Coronado from June 2016 through May 2017. (Doc. 13-7, at 72, 125). The ALJ specifically discussed DiMaggio's therapy records from February 2017 and cited multiple other treatment notes throughout the record that span over the alleged period, including those given by Dr. Miller and Dr. Coronado. (Doc. 13-2, at 22; Doc. 13-7, at 60, 86, 89-91, 98, 111, 119, 125).

Although the ALJ has a duty to assist a claimant in developing a full and fair record, he is not required to "search out relevant evidence which might be available, since that would in effect shift the burden of proof to the government." *Ventura*, 55 F.3d at 902. Rather, the ALJ must ensure that the evidence is sufficient to make a benefit determination and to resolve any material conflicts or ambiguities in the evidence. Furthermore, because DiMaggio was represented by counsel at the administrative level, the ALJ is entitled to assume that the claimant is making the strongest case possible for benefits. *Glenn v. Sec'y of Health & Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987).

DiMaggio does not show that a consultative examination was necessary for the ALJ to reach a disability decision as to his mental capabilities. *See Thompson,* 45 F. App'x at 149. When the evidence is considered as a whole, no conflicts are revealed and the evidence is sufficient; it consistently shows that DiMaggio was not more than moderately affected by mental health limitations and alcohol use. (Doc. 13-2, at 22-23). As articulated by the ALJ,

"the record generally reveals normal findings or non-remarkable findings with [DiMaggio's] mood and affect." (Doc. 13-2, at 22). DiMaggio does not identify significant treatment or symptomology in support of his position that would evidence further mental limitations than those afforded by the ALJ. The ALJ justified his decision by citing (1) DiMaggio's presentation and overall behavior as recorded in treatment notes (2) his outpatient therapy and treatment records, (3) his ability to manage his symptoms with medication, and (4) improvements in his mental condition. (Doc. 13-2, at 22-23). These findings constitute sufficient evidence to support the ALJ's conclusion that DiMaggio's mental impairments and treatment support "no more than moderate limitations." (Doc. 13-2, at 23).

The evidence relied on by the ALJ is sufficient to warrant a finding that DiMaggio possessed no more than the moderate mental limitations reflected in the RFC. Under the deferential standard of review this Court undertakes, substantial evidence supports the ALJ's evaluation. As such, no consultative evaluation was required and the ALJ's decision shall not be vacated on this ground.

Additionally, DiMaggio argues that the ALJ demonstrated his "lack of proper guidance from a medical professional" when assessing the severity of DiMaggio's mental impairments.[3] (Doc. 16, at 12). The ALJ found that DiMaggio had severe impairments of major depressive disorder, panic disorder, and alcohol dependence. (Doc. 13-2, at 19). An impairment is deemed severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Next, the ALJ examined

---

[3] Although DiMaggio states that he takes issue with the ALJ's determinations in step two, he references findings in step three of the ALJ's analysis. (Doc. 16, at 12). Thus, the Court examines the ALJ's reasoning in step three of his analysis. (Doc. 13-2, at 19-21).

DiMaggio's severe impairments to determine if they, alone or in combination, met the severity of listed impairments 12.04 – depressive, bipolar and related disorders and 12.06 – anxiety and obsessive-compulsive disorders. (Doc. 12-2, at 21). The ALJ found that DiMaggio "does not have an impairment or combination of impairments that meets or medically equals the severity of . . . listed impairments [12.04 or 12.06]." (Doc. 13-2, at 19-20). DiMaggio contends that the ALJ supported his findings with evidence from after the period of disability ending in June 2018. (Doc. 16, at 12). Although the ALJ lists evidence from a period after June 2018, he also specifically notes evidence from the relevant period of disability from July 2015 until March 2018. (Doc. 13-2, at 20; Doc. 13-7, at 37, 60, 86, 98, 101, 103, 111, 119, 159-169, 206-235). Thus, the ALJ cited substantial evidence when evaluating DiMaggio's severe impairments.

Finally, DiMaggio alleges that his impairments do not meet the basic mental requirements to perform simple, unskilled work. (Doc. 16, at 13). Specifically, DiMaggio argues that his mental health records and inability to attend work and stay on task for the appropriate amount of time warrant a finding of disabled during the relevant period. (Doc. 16, at 13). As discussed *supra*, the Court finds that the ALJ cited substantial evidence in assessing DiMaggio's mental health limitations and crafting his RFC. To the extent DiMaggio asks the Court to re-weigh the record evidence or make new factual findings, the Court may not invade the ALJ's province as a finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion would have been reached, but whether substantial evidence supported the ALJ's decision." *See Daub v. Colvin*, No. 3:15-CV-1066, 2015 WL 8013037, at *9 (M.D. Pa Dec. 7, 2015). Therefore, substantial evidence supports the ALJ's RFC determination.

As the ALJ considered and explained his reasoning with regard to the severity of DiMaggio's mental impairments and how they affect his RFC, substantial evidence supports his RFC determination. (Doc. 13-2, at 22-23).

## V.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's decision to deny DiMaggio's application for benefits be **AFFIRMED**, final judgment be issued in favor of the Commissioner, and the Clerk of Court close this case.

An appropriate Order follows.


Dated: August 26, 2022                              *s/ Karoline Mehalchick*
                                                    **KAROLINE MEHALCHICK**
                                                    **Chief United States Magistrate Judge**

- 21 -